# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr>
<td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PROGRESSIVE CASUALTY INSURANCE COMPANY, an unknown
business entity; and DOES 1 through 50, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KARESHMEH KABIRI

</td>
<td>

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/05/2021** at 10:50:38 AM

Clerk of the Superior Court
By Carolina Miranda, Deputy Clerk

</td>
</tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr>
<td>

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of CA, County of SD

330 W. Broadway San Diego, CA 92101

</td>
<td>

CASE NUMBER:
*(Número del Caso):*

37-2021-00033617-CU-OE-CTL

</td>
</tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Josh D. Gruenberg, Esq. GRUENBERG LAW 2155 First Avenue San Diego CA 92101

<table>
<tr>
<td>DATE: 08/06/2021<br>*(Fecha)*</td>
<td>Clerk, by<br>*(Secretario)*<br>C. Miranda</td>
<td>, Deputy<br>*(Adjunto)*</td>
</tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Progressive Casualty Insurance Company, an unknown business entity

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* an unknown business entity
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Josh D. Gruenberg, Esq. SB# 163281
Benjamin S. Silver, Esq. SB# 284741
**GRUENBERG LAW**
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013
TELEPHONE: (619) 230-1234
TELECOPIER: (619) 230-1074

Attorneys for Plaintiff,
**KARESHMEH KABIRI**

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/05/2021** at 10:58:38 AM
Clerk of the Superior Court
By Carolina Miranda, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| KARESHMEH KABIRI, an individual, | Case No. 37-2021-00033617-CU-OE-CTL |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR:** |
| v. | 1. SEXUAL HARASSMENT [Cal. Gov't Code § 12940(j)]; |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, an unknown business entity; and DOES 1 through 50, Inclusive, | 2. FAILURE TO PREVENT HARASSMENT AND/OR DISCRIMINATION [Cal. Gov't Code § 12940(k)]; |
| Defendants. | 3. RETALIATION [Cal. Gov't Code § 12940(h)]; |
| | 4. NEGLIGENT SUPERVISION; |
| | 5. WRONGFUL TERMINATION [Cal. Gov't. Code § 12940 *et seq.*]; |
| | 6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; |
| | 7. FAILURE TO INDEMNIFY [Cal. Lab. Code § 2802]. |
| | **[JURY TRIAL DEMANDED]** |

COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.  Plaintiff, KARESHMEH KABIRI (hereinafter "Plaintiff" or "Ms. Kabiri"), is a natural

1 person who is, and at all relevant times was, a resident of the United States and a

2 domiciliary of the State of California, County of San Diego.

3 2. Plaintiff is informed and believes and thereon alleges that Defendant, PROGRESSIVE

4 CASUALTY INSURANCE COMPANY (hereinafter "PROGRESSIVE" or

5 "Defendant"), is, and at all relevant times herein mentioned was, a California Corporation

6 authorized for, and engaging in, business in the State of California, and subject to suit

7 under the California Fair Employment Housing Act (FEHA), California Government

8 Code § 12940 *et seq.*, as it employs in excess of five employees in California and

9 elsewhere.

10 3. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as

11 DOES 1 to 50, and therefore sues these defendants by such fictitious names. Plaintiff will

12 amend this Complaint to allege the true names and capacities when they are ascertained.

13 4. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named

14 Defendant is responsible in some manner for the occurrences herein alleged, and

15 Plaintiff's injuries and damages as herein alleged are directly, proximately and/or legally

16 caused by Defendants.

17 5. Plaintiff is informed and believes and thereon alleges that the aforementioned DOES are

18 somehow responsible for the acts alleged herein as the agents, employers, representatives

19 or employees of other named Defendants, and in doing the acts herein alleged were

20 acting within the scope of their agency, employment or representative capacity of said

21 named Defendants.

22 6. The tortious acts and omissions alleged to have occurred herein were performed by

23 Defendants' management level employees. Defendants allowed and/or condoned a

24 continuing pattern of unlawful practices, and have caused, and will continue to cause,

25 Plaintiff economic damage in an amount to be proven at trial.

26 7. At all times mentioned herein, Cal. Gov't Code §12940 *et seq.* was in full force and

27 effect and was binding on Defendants.

28 8. The actions of Defendant(s) against Plaintiff constitute unlawful employment practices in

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1   violation of Cal. Gov't. Code §12940 *et seq.*, as herein alleged, and have caused, and will

2   continue to cause, Plaintiff emotional distress and loss of earnings.

3   9.   The actions of Defendant(s), and each of them, against Plaintiff constitute unlawful

4   employment practices in violation of public policy, and caused, and will continue to

5   cause, Plaintiff loss of future earnings and employment.

6   10.   Defendant(s) had actual and/or constructive knowledge of the tortious acts and omissions

7   alleged and thereafter ratified said conduct by failing to reprimand or terminate.

8   11.   Defendant(s) committed the acts alleged herein maliciously, fraudulently, oppressively,

9   and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil

10   motive amounting to malice or despicable conduct. Alternatively, Defendants' wrongful

11   conduct was carried out with a conscious disregard for Plaintiff's rights.

12   12.   Defendants' conduct warrants the assessment of punitive damages in an amount

13   sufficient to punish Defendants and deter others from engaging in similar conduct.

14   13.   As a further proximate result of the unlawful actions of Defendant(s), and each of their

15   agents, against Plaintiff as alleged herein, Plaintiff has been harmed in that she has

16   suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and

17   emotional distress.

18   14.   Plaintiff seeks compensatory damages, punitive damages, costs of suit herein, and

19   attorney fees.

20   15.   Plaintiff filed a complaint with the Department of Fair Employment and Housing on July

21   27, 2021 and on that same day received a Right-To-Sue Letter. The Complaint and Letter

22   are collectively attached hereto as "Exhibit A."

23   **SPECIFIC FACTUAL ALLEGATIONS**

24   16.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

25   the preceding paragraphs as though fully set forth herein.

26   17.   PROGRESSIVE is an American Insurance company and one of the largest providers of

27   car insurance in the United States. PROGESSIVE also insures motorcycles, boats, RVs,

28   and commercial vehicles and provides home insurance through select companies.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

18. According to its website, since PROGRESSIVE opened its doors, it has "been a team of people who risk, learn, and grow together, in the name of progress." Additionally, according to the website, PROGRESSIVE employees "come to work each day looking at everything through the lens of 'How can we make this better?'"[1]

19. In or around March 2020, PROGRESSIVE hired Ms. Kabiri to the position of Claims Specialist. That month, the Ms. Kabiri's employment relationship with PROGRESSIVE began.

20. As a Claims Specialist, Ms. Kabiri's responsibilities included, but were not limited to, handling claims timely and appropriately, and speaking with PROGRESSIVE's customers in order to move forward with the claims process.

21. At all relevant times herein mentioned, Ms. Kabiri performed her job in a competent and diligent manner. As an example, Ms. Kabiri was ranked in the top tier after her first annual review.

22. Ms. Kabiri's first supervisor was Ashley Perschbacher ("Perschbacher").

23. Like many individuals around the world, due to the COVID-19 pandemic, Ms. Kabiri was required to work remotely from the start of her employment with PROGRESSIVE. As such, PROGRESSIVE issued Ms. Kabiri a laptop to use to perform her job duties. Ms. Kabiri's duties required her use of the laptop, and required her to access the internet. Despite providing Ms. Kabiri a laptop, PROGRESSIVE failed to indemnify Ms. Kabiri for the cost of her internet/Wi-Fi that she was required to use to perform her job duties. PROGRESSIVE knew Ms. Kabiri was working remote, from her home, and needed access to the internet to perform her duties. In fact, PROGRESSIVE instructed and required Ms. Kabiri to work remotely. PROGRESSIVE failed to reimburse Ms. Kabiri for any portion of her internet bill, in violation of California. PROGRESSIVE failed to reimburse Ms. Kabiri for this necessary business expenditure.

24. On or about March 10, 2021, Ms. Kabiri was assigned a new supervisor, Sean Edwards ("Edwards"). Ms. Kabiri spoke with her new supervisor, Edwards, for the first time that

---

[1] https://www.progressive.com/about/who-we-are/

1    day via a phone call through Microsoft Teams.

2  25.  The following day, on or about March 11, 2021, Edwards contacted Ms. Kabiri asking for

3    her to call him again. Ms. Kabiri was busy working that day and was unable to

4    immediately respond or call him. As a result, Edwards kept messaging Ms. Kabiri for her

5    to call him. When Ms. Kabiri ultimately called Edwards, he asked her to turn on her

6    computer camera to have video be a part of the Microsoft Teams call. Ms. Kabiri found

7    the request odd because in the year prior, throughout her entire employment with

8    PROGRESSIVE, she had never turned her computer camera on for a one-on-one phone

9    call. Despite her hesitation and concern, Ms. Kabiri turned her camera on. Ms. Kabiri

10    also requested that Edwards turn on his camera. Edwards refused and said his camera was

11    allegedly not working. Given that Edwards could not join via video call, Ms. Kabiri

12    found the request that she turn on her camera even more disturbing. The call lasted

13    approximately ten minutes. During the call, Edwards's tone was very assertive and

14    demanding. Ms. Kabiri felt that Edwards was intending to assert power over her. Ms.

15    Kabiri felt uncomfortable, violated, and harassed by Edwards's conduct.

16  26.  Unsettled about Edwards's request, that evening, Ms. Kabiri sent her manager, Erin

17    Parker ("Parker"), an email complaining that she felt sexually harassed by Edwards. Ms.

18    Kabiri requested the rest of the week off because she felt sick to her stomach from

19    Edwards's harassing conduct. Additionally, Ms. Kabiri sent her prior supervisor,

20    Perschbacher, a text message informing her of what had happened that day and

21    expressing her reasonable belief that she had been subjected to sexual harassment by

22    Edwards. PROGRESSIVE was on notice that Ms. Kabiri believed she was subjected to

23    sexual harassment by her supervisor, Edwards.

24  27.  Thereafter, on or about March 16, 2021, Ms. Kabiri had a meeting with Parker and one of

25    PROGRESSIVE's Human Resource Consultants, Tracy Keller ("Keller"). During this

26    call, Ms. Kabiri again complained about her belief that she was subjected to sexually

27    harassing conduct by Edwards and went into detail about what had happened. In

28    response, Parker and Keller told Ms. Kabiri that Edwards's conduct was not sexual

GRUENBERG LAW
215S FIRST AVENUE
SAN DIEGO, CALIFORNIA  92101-2013

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1   harassment. Ms. Kabiri was upset by this response. Ms. Kabiri asked for PROGRESSIVE

2   to move her away from Edwards's supervision. In response, PROGRESSIVE refused to

3   move Ms. Kabiri to another supervisor and asked her to give Edwards another chance

4   even though she told them she felt uncomfortable working under his supervision. Ms.

5   Kabiri felt like she was being forced to keep working under Edwards's supervision

6   despite her concerns and discomfort working under his purview. To Ms. Kabiri's

7   knowledge, there was no investigation into her complaint and no other corrective action

8   was taken. Ms. Kabiri did not feel like her complaint was being taken seriously and felt

9   her concerns were being dismissed. Ms. Kabiri became further upset by

10  PROGRESSIVE's response, or lack thereof.

11  28.   In the week following Ms. Kabiri's complaints of sexual harassment against Edwards,

12        Edwards began giving Ms. Kabiri the silent treatment. Ms. Kabiri was surprised by this

13        retaliatory conduct and was concerned that Edwards knew about her complaint.

14        Edwards's silent treatment made it more difficult for Ms. Kabiri to perform her duties.

15  29.   Shortly thereafter, on or about March 30, 2021, Ms. Kabiri received a call from Keller

16        and Parker informing her that PROGRESSIVE was investigating her time card

17        punches/data and work history. Keller added that PROGRESSIVE had allegedly run a

18        report on Ms. Kabiri's computer and discovered that there were hours Ms. Kabiri had

19        claimed to be working that the computer allegedly indicated inactivity. Ms. Kabiri was

20        shocked by this accusation and had no idea what Keller was suggesting had occurred.

21        Keller proceeded to ask Ms. Kabiri about some dates in February that had allegedly

22        shown inactivity. Ms. Kabiri could not recall the specific date as it was over a month

23        prior, but confirmed she had been working when she claimed to work. During the call,

24        Ms. Kabiri stated that she found it strange that these allegations were coming up within

25        weeks of her complaints of conduct she reasonably believed to be sexual harassment.

26        Keller and Parker were silent after Ms. Kabiri's complaint of retaliation. Ms. Kabiri

27        asked to see written documentation to try and answer their questions about what may or

28        may not have happened the month prior. However, Ms. Kabiri was not provided any

1   documentation confirming PROGRESSIVE's accusations.

2   30.   Two days later, on or about April 1, 2021, Ms. Kabiri received another call from Parker

3   and Jolane Davis informing her that her employment was being terminated for an alleged

4   ethics breach.

5   31.   Ms. Kabiri believes and thereon alleges that her opposition to, and reporting of,

6   Edwards's sexual harassment, which she reasonably believed was unlawful, was a

7   substantial motivating factor in PROGRESSIVE's decision to single Ms. Kabiri out and

8   scrutinize her time cards and computer activity.

9   32.   Ms. Kabiri believes and thereon alleges that her opposition to, and reporting of,

10   Edwards's sexual harassment and retaliatory time card investigation, which she

11   reasonably believed was unlawful, was a substantial motivating factor in

12   PROGRESSIVE's decision to termination her employment.

13   ### FIRST CAUSE OF ACTION

14   ### SEXUAL HARASSMENT

15   ### [Cal. Gov't Code § 12940(j)]

16   33.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

17   the preceding paragraphs as though fully set forth herein.

18   34.   Plaintiff was at all times material hereto an employee covered by California Government

19   Code §12940 *et seq.*, which prohibits harassment in employment on the basis of gender

20   and/or sex.

21   35.   Defendant is, and at all times material hereto was, an employer and/or person within the

22   meaning of the Fair Employment and Housing Act and, as such, barred from harassing

23   Plaintiff on the basis of her gender and/or sex, as set forth in Cal. Gov't Code § 12940(j).

24   36.   Plaintiff was subjected to unwanted and harassing conduct on the basis of her gender

25   and/or sex, as set forth herein.

26   37.   The harassing conduct was severe and pervasive, as stated herein.

27   38.   A reasonable person in Plaintiff's circumstances would have considered the work

28   environment to be hostile or abusive, and Plaintiff did in fact consider the work

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1   environment to be hostile or abusive.

2   39.   As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

3   sustained and continues to sustain substantial losses in earnings, employment benefits,

4   employment opportunities, and Plaintiff has suffered other economic losses in an amount

5   to be determined at time of trial. Plaintiff has sought to mitigate these damages.

6   40.   As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff suffered

7   emotional distress, to her damage, in a sum to be established according to proof.

8   41.   As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled

9   to recover punitive and exemplary damages in an amount commensurate with

10   Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible

11   conduct.

12   42.   In addition to such other damages as may properly be recovered herein, Plaintiff is

13   entitled to recover attorney fees and costs pursuant to Cal. Gov't. Code § 12965.

14   **SECOND CAUSE OF ACTION**

15   **FAILURE TO PREVENT HARASSMENT**

16   **[Cal. Gov't Code § 12940(k)]**

17   43.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

18   the preceding paragraphs as though fully set forth herein.

19   44.   Plaintiff was subjected to harassing conduct on the basis of her gender and/or sex, as set

20   forth herein. Plaintiff was also subjected to retaliation for opposing said harassment, as

21   described herein.

22   45.   Defendant failed to take reasonable steps to prevent the harassment and retaliation, as

23   described herein.

24   46.   As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

25   sustained and continues to sustain substantial losses in earnings, employment benefits,

26   employment opportunities, and Plaintiff has suffered other economic losses in an amount

27   to be determined at time of trial. Plaintiff has sought to mitigate these damages.

28   47.   As a further direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1    has suffered and continues to suffer humiliation, emotional distress, loss of reputation,

2    and mental and physical pain and anguish, all to her damage in a sum to be established

3    according to proof.

4    48.   As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled

5    to recover punitive and exemplary damages in an amount commensurate with

6    Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible

7    conduct.

8    49.   In addition to such other damages as may properly be recovered herein, Plaintiff is

9    entitled to recover attorney fees and costs pursuant Cal. Gov't. Code § 12965.

10                        **THIRD CAUSE OF ACTION**

11                             **RETALIATION**

12                      **[Cal. Gov't Code § 12940(h)]**

13   50.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

14   the preceding paragraphs as though fully set forth herein.

15   51.   At all times mentioned herein, Cal. Gov't Code § 12940(h) was in full force and effect

16   and was binding on Defendant. This section requires Defendant, as an employer, to

17   refrain from retaliating against any employee who has opposed any practices forbidden

18   under Cal. Gov't Code § 12940, or because the employee has filed a complaint, testified,

19   or assisted in any proceeding under Cal. Gov't Code § 12940(h).

20   52.   Defendant, by and through its employees and agents, engaged in conduct that, taken as a

21   whole, materially and adversely affected the terms and conditions of Plaintiff's

22   employment, as stated herein.

23   53.   Plaintiff believes and thereon alleges that her opposition to the conduct she reasonably

24   believed to be sexual harassment was a motivating reason for Defendant engaging in

25   conduct that, taken as a whole, materially and adversely affected the terms and conditions

26   of Plaintiff's employment, as stated herein.

27   54.   Defendant's conduct of retaliating against Plaintiff in the terms, conditions, and

28   privileges of her employment, as stated herein, violates Cal. Gov't Code § 12940(h).

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA  92101-2013

55. As a direct, foreseeable and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

56. As a further direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

57. As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

58. In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover attorney fees and costs pursuant to Cal. Gov't. Code § 12965.

## FOURTH CAUSE OF ACTION

## NEGLIGENT SUPERVISION

59. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

60. Plaintiff performed work for Defendant as an employee, as stated herein.

61. Defendant had a legal duty to supervise all of its employees.

62. Defendant's supervisory employees took part in unlawful harassing and retaliatory conduct, as stated herein.

63. Defendant knew or should have known that its employees were engaging in unlawful harassing and retaliatory practices, as stated herein.

64. Defendant failed to take reasonable steps necessary to prevent the unlawful harassing and retaliatory conduct described herein.

65. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits,

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1   employment opportunities, and Plaintiff has suffered other economic losses in an amount

2   to be determined at time of trial. Plaintiff has sought to mitigate these damages.

3   66.   As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

4   suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

5   mental and physical pain and anguish, all to her damage in a sum to be established

6   according to proof.

7   67.   Plaintiff has incurred and continues to incur legal expenses and attorney's fees.  In

8   addition to such other damages as may properly be recovered herein, Plaintiff is entitled

9   to recover prevailing party attorney fees.

10   **FIFTH CAUSE OF ACTION**

11   **WRONGFUL TERMINATION**

12   **[Cal. Gov't Code § 12940 *et seq.*]**

13   68.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

14   the preceding paragraphs as though fully set forth herein.

15   69.   At all times mentioned herein, Cal. Gov't Code § 12940 *et seq.* was in full force and

16   effect and was binding on Defendant.

17   70.   Plaintiff performed work for Defendant, as an employee, as stated herein.

18   71.   Defendant's management level employees engaged in unlawful harassing and retaliatory

19   conduct, in violation of Cal. Gov't Code § 12940 *et seq.*, as stated herein.

20   72.   Plaintiff opposed the unlawful harassing and retaliatory conduct.

21   73.   Plaintiff's opposition to the unlawful harassing and retaliatory conduct was a substantial

22   motivating reason for Defendant terminating her employment.

23   74.   As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

24   sustained and continues to sustain substantial losses in earnings, employment benefits,

25   employment opportunities, and Plaintiff has suffered other economic losses in an amount

26   to be determined at time of trial. Plaintiff has sought to mitigate these damages.

27   75.   As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

28   suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1  mental and physical pain and anguish, all to her damage in a sum to be established

2  according to proof.

3  76.  As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled

4  to recover punitive and exemplary damages in an amount commensurate with

5  Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible

6  conduct.

7  77.  In addition to such other damages as may properly be recovered herein, Plaintiff is

8  entitled to recover prevailing party attorney's fees.

9  78.  In addition to such other damages as may properly be recovered herein, Plaintiff is

10  entitled to recover attorney fees and costs pursuant to Cal. Gov't. Code § 12965.

11  ## SIXTH CAUSE OF ACTION

12  ## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

13  79.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in

14  the preceding paragraphs as though fully set forth herein.

15  80.  Defendant's intentional conduct, as set forth herein, was extreme and outrageous.

16  81.  Defendant intended to cause Plaintiff to suffer extreme emotional distress. Plaintiff

17  suffered extreme emotional distress.

18  82.  As a further direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff

19  has sustained and continues to suffer humiliation, emotional distress, loss of reputation,

20  and mental and physical pain and anguish, all to Plaintiff's damage, in an amount

21  according to proof at trial.

22  83.  Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively

23  with the wrongful intention of injuring Plaintiff from an improper and evil motive

24  amounting to malice and in conscious disregard of Plaintiff's rights. Plaintiff is thus

25  entitled to recover exemplary and punitive damages in amounts to be proven at trial.

26  ///

27  ///

28  ///

**SEVENTH CAUSE OF ACTION**

**FAILURE TO INDEMNIFY**

**[Cal. Lab. Code § 2802]**

84.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

85.   Plaintiff performed work for Defendant, as an employee, as stated herein.

86.   Labor Code section 2802 provides that employers must indemnify employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…" The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses onto their employees. *Cochran v. Schwan's Home Service, Inc.* (2014) 228 Cal. App. 4th 1137, 1144.

87.   At Defendant's direction, Plaintiff incurred expenses in order to complete her duties, including but not limited to using her personal Wi-Fi while working remotely from home.

88.   Defendant's company-wide policy and/or practice of passing its necessary expenditures on to Plaintiff is in violation of California Labor Code section 2802. Defendant has intentionally and willfully failed to fully reimburse Plaintiff for necessary business-related expenses and costs.

89.   As a direct, foreseeable and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial economic damages. Plaintiff seeks to be reimbursed for these economic damages.

90.   In addition, Plaintiff has incurred attorney's fees in enforcing her rights granted by Labor Code section 2802, and the term "necessary expenditures or losses" shall include reasonable costs, including, but not limited to, attorney's fees. Cal. Labor Code § 2802(c). Therefore, Plaintiffs seek to be reimbursed for his attorney's fees incurred through this action.

91.   Plaintiff is are therefore entitled to recover civil penalties pursuant to Labor Code section 2699(a), (f)-(g).

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

**WHEREFORE,** Plaintiff prays for the following relief:

1.   For compensatory damages, including loss of wages, promotional opportunities, benefits, and other opportunities of employment, according to proof;

2.   For special damages in an amount according to proof;

3.   For mental and emotional distress, pain and suffering, and physical pain damages;

4.   For back pay, front pay, and other monetary relief;

5.   For punitive damages in an amount necessary to make an example of, and to punish, Defendant, and to deter future similar misconduct;

6.   For costs of suit, including attorney fees as permitted by law, including those available pursuant to Cal. Gov't Code § 12965(b);

7.   For an award of interest, including prejudgment interest, at the legal rate as permitted by law, including those permitted by Cal. Gov't Code § 12965(b);

8.   For an award of penalties pursuant to Cal. Labor Code §§ 2699(a), (f)-(g)

9.   For such other and further relief as the Court deems proper and just under all the circumstances.

**PLAINTIFF KARESHMEH KABIRI** demands a jury trial on all issues in this case.

DATED: June 27, 2021                    **GRUENBERG LAW**

JOSH D. GRUENBERG
BENJAMIN S. SILVER
Attorneys for Plaintiff,
**KARESHMEH KABIRI**

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

PLAINTIFF'S COMPLAINT FOR DAMAGES
14

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013

1

2

3

4

5

6

7

8

9

10

11

**EXHIBIT A**

12   (1)   PLAINTIFF'S CHARGE FILED WITH THE DEPARTMENT OF FAIR

13         EMPLOYMENT AND HOUSING (DFEH).

14   (2)   PLAINTIFF'S RIGHT TO SUE LETTERS FROM THE DFEH.

15

16

17

18

19

20

21

22

23

24

25

26

27

28



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency   GAVIN NEWSOM, GOVERNOR

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

July 27, 2021

Benjamin Silver
2155 First Ave
San Diego, CA 92101

RE: **Notice to Complainant's Attorney**
   DFEH Matter Number: 202107-14293927
   Right to Sue: Kabiri / Progressive Casualty Insurance Company

Dear Benjamin Silver:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                           GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**     KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

July 27, 2021

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202107-14293927
      Right to Sue: Kabiri / Progressive Casualty Insurance Company

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency      GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

July 27, 2021

Kareshmeh Kabiri

,

RE:   **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202107-14293927
Right to Sue: Kabiri / Progressive Casualty Insurance Company

Dear Kareshmeh Kabiri:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective July 27, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Kareshmeh Kabiri                                                DFEH No. 202107-14293927

                                        Complainant,

vs.

Progressive Casualty Insurance Company

,

                                        Respondents

———————————————————————————

**1.** Respondent **Progressive Casualty Insurance Company** is an **employer Progressive Casualty Insurance Company** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Kareshmeh Kabiri**, resides in the City of , State of .

**3.** Complainant alleges that on or about **April 1, 2021**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, sexual harassment-hostile environment.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, reprimanded, other, denied or forced to transfer.

**Additional Complaint Details:** In or around March 2020, Respondent Progressive Casualty Insurance Company ("PROGRESSIVE") hired Complainant Kareshmeh Kabiri ("Ms. Kabiri") to the position of Claims Specialist. That month, the Ms. Kabiri's employment relationship with PROGRESSIVE began.

-1-
*Complaint – DFEH No. 202107-14293927*

Date Filed: July 27, 2021

1   As a Claims Specialist, Ms. Kabiri's responsibilities included, but were not limited to,
    handling claims timely and appropriately, and speaking with Defendant's customers in order
2   to move forward with the claims process.

3   At all relevant times herein mentioned, Ms. Kabiri performed her job in a competent and
    diligent manner. As an example, Ms. Kabiri was ranked in the top tier after her first annual
    review.
4   Ms. Kabiri's first supervisor was Ashley Perschbacher ("Perschbacher").

5   Like many individuals around the world, due to the COVID-19 pandemic, Ms. Kabiri was
    required to work remotely from the start of her employment with PROGRESSIVE. As such,
6   PROGRESSIVE issued Ms. Kabiri a laptop to use to perform her job duties. Ms. Kabiri's
    duties required her use of the laptop, and required her to access the internet.
7   On or about March 10, 2021, Ms. Kabiri was assigned a new supervisor, Sean Edwards
    ("Edwards"). Ms. Kabiri spoke with her new supervisor, Edwards, for the first time that day
8   via a phone call through Microsoft Teams.

9   The following day, on or about March 11, 2021, Edwards contacted Ms. Kabiri asking for her
    to call him again. Ms. Kabiri was busy working that day and was unable to immediately
10  respond or call him. As a result, Edwards kept messaging Ms. Kabiri for her to call him.

11  When Ms. Kabiri ultimately called Edwards, he asked her to turn on her computer camera to
    have video be a part of the Microsoft Teams call. Ms. Kabiri found the request odd because
12  in the year prior, throughout her entire employment with PROGRESSIVE, she had never
    turned her computer camera on for a one-on-one phone call. Despite her hesitation and
13  concern, Ms. Kabiri turned her camera on. Ms. Kabiri also requested that Edwards turn on
    his camera. Edwards refused and said his camera was allegedly not working. Given that
14  Edwards could not join via video call, Ms. Kabiri found the request that she turn on her
    camera even more disturbing. The call lasted approximately ten minutes. During the call,
15  Edwards's tone was very assertive and demanding. Ms. Kabiri felt that Edwards was
    intending to assert power over her. Ms. Kabiri felt uncomfortable, violated, and harassed by
    Edwards's conduct.
16  Unsettled about Edwards's request, that evening, Ms. Kabiri sent her manager, Erin Parker
    ("Parker"), an email complaining that she felt sexually harassed by Edwards. Ms. Kabiri
17  requested the rest of the week off because she felt sick to her stomach from Edwards's
    harassing conduct. Additionally, Ms. Kabiri sent her prior supervisor, Perschbacher, a text
18  message informing her of what had happened that day and expressing her reasonable belief
    that she had been subjected to sexual harassment by Edwards. PROGRESSIVE was on
19  notice that Ms. Kabiri believed she was subjected to sexual harassment by her supervisor,
    Edwards.
20  Thereafter, on or about March 16, 2021, Ms. Kabiri had a meeting with Parker and one of
    PROGRESSIVE's Human Resource Consultants, Tracy Keller ("Keller"). During this call,
21  Ms. Kabiri again complained about her belief that she was subjected to sexually harassing
    conduct by Edwards and went into detail about what had happened. In response, Parker
22  and Keller told Ms. Kabiri that Edwards's conduct was not sexual harassment. Ms. Kabiri
    was upset by this response. Ms. Kabiri asked for PROGRESSIVE to move her away from
23  Edwards's supervision. In response, PROGRESSIVE refused to move Ms. Kabiri to another
    supervisor and just asked her to give Edwards another chance even though she told them
24  she felt uncomfortable working under him. Ms. Kabiri felt like she was being forced to keep
    working under Edwards's supervision despite her concerns and discomfort working under
25  his purview. To Ms. Kabiri's knowledge, there was no investigation into her complaint and no

26

27
                                        -2-
                        Complaint – DFEH No. 202107-14293927
28  Date Filed: July 27, 2021

1    other corrective action was taken. Ms. Kabiri did not feel like her complaint was being taken seriously and felt her concerns were being dismissed. Ms. Kabiri became further upset by
2    PROGRESSIVE's response, or lack thereof.

     In the week following Ms. Kabiri's complaints of sexual harassment against Edwards,
3    Edwards began giving Ms. Kabiri the silent treatment. Ms. Kabiri was surprised by this retaliatory conduct and was concerned that Edwards knew about her complaint. Edwards's
4    silent treatment made it more difficult for Ms. Kabiri to perform her duties.

     Shortly thereafter, on or about March 30, 2021, Ms. Kabiri received a call from Keller and
5    Parker informing her that PROGRESSIVE was investigating her time card punches/data and
6    work history. Keller added that PROGRESSIVE had allegedly run a report on Ms. Kabiri's computer and discovered that there were hours Ms. Kabiri had claimed to be working that
7    the computer allegedly indicated inactivity. Ms. Kabiri was shocked by this accusation and had no idea what Keller was suggesting had occurred. Keller proceeded to ask Ms. Kabiri
8    about some dates in February that had allegedly shown inactivity. Ms. Kabiri could not recall the specific date as it was over a month prior, but confirmed she had been working when
9    she claimed to work. During the call, Ms. Kabiri stated that she found it strange that these allegations were coming up within weeks of her complaints of conduct she reasonably
10    believed to be sexual harassment. Keller and Parker were silent after Ms. Kabiri's complaint of retaliation. Ms. Kabiri asked to see written documentation to try and answer their
11    questions about what may or may not have happened the month prior. However, Ms. Kabiri was not provided any documentation confirming PROGRESSIVE's accusations.
12    Two days later, on or about April 1, 2021, Ms. Kabiri received another call from Parker and Jolane Davis informing her that her employment was being terminated for an alleged ethics
13    breach.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  VERIFICATION

2  I, **Benjamin S Silver**, am the **Attorney** in the above-entitled complaint.  I have read
3  the foregoing complaint and know the contents thereof.   The matters alleged are
   based on information and belief, which I believe to be true.

4
   On July 27, 2021, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                       **San Diego, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                             -4-
27                          *Complaint – DFEH No. 202107-14293927*

28  Date Filed: July 27, 2021

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7070 |

| PLAINTIFF(S) / PETITIONER(S): | Kareshmeh Kabiri |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Progressive Casualty Insurance Company |
|---|---|

KABIRI VS PROGRESSIVE CASUALTY INSURANCE COMPANY [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2021-00033617-CU-OE-CTL |

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge: Carolyn Caietti                                    Department: C-70

**COMPLAINT/PETITION FILED:** 08/05/2021

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 02/04/2022 | 09:45 am | C-70 | Carolyn Caietti |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
  - **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
  - **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
  - **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2021-00033617-CU-OE-CTL      CASE TITLE: Kabiri vs Progressive Casualty Insurance Company [IMAGED

<u>NOTICE</u>: **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** *and*
        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**<u>Potential Advantages and Disadvantages of ADR</u>**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**<u>Most Common Types of ADR</u>**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

**Local ADR Programs for Civil Cases**                                                                            •

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice**

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost.*

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:         330 West Broadway | |
| MAILING ADDRESS:      330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:          Central | |

| PLAINTIFF(S):   Kareshmeh Kabiri |
|---|
| DEFENDANT(S): Progressive Casualty Insurance Company |
| SHORT TITLE:   KABIRI VS PROGRESSIVE CASUALTY INSURANCE COMPANY [IMAGED] |

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2021-00033617-CU-OE-CTL |
|---|---|

Judge: Carolyn Caietti                                                    Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                          ☐ Non-binding private arbitration

☐ Mediation (private)                                        ☐ Binding private arbitration

☐ Voluntary settlement conference (private)      ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                            ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                Date: _____

Name of Plaintiff                                                    Name of Defendant

_____                          _____
Signature                                                               Signature

Name of Plaintiff's Attorney                                  Name of Defendant's Attorney

_____                          _____
Signature                                                               Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  08/06/2021                                               _____
                                                                              JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page: 1

**EXHIBIT B**

1   SEYFARTH SHAW LLP
    Michael J. Burns (SBN 172614)
2   mburns@seyfarth.com
    560 Mission Street, 31st Floor
3   San Francisco, California 94105
    Telephone:    (415) 397-2823
4   Facsimile:    (415) 397-8549

5   SEYFARTH SHAW LLP
    Phillip J. Ebsworth (SBN 311026)
6   pebsworth@seyfarth.com
    400 Capitol Mall, Suite 2350
7   Sacramento, California 95814
    Telephone:    (916) 448-0159
8   Facsimile:    (916) 558-4839

9   Attorneys for Defendant
    PROGRESSIVE CASUALTY INSURANCE COMPANY
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12              COUNTY OF SAN DIEGO, CENTRAL DIVISION

13

14   KARESHMEH KABIRI, an individual,          Case No. 37-2021-00033617-CU-OE-CTL

15                  Plaintiff,                 **DEFENDANT PROGRESSIVE
                                               CASUALTY INSURANCE COMPANY'S
16          v.                                 ANSWER TO PLAINTIFF'S COMPLAINT
                                               FOR DAMAGES**
17   PROGRESSIVE CASUALTY INSURANCE
     COMPANY, an unknown business entity; and
18   DOES 1 through 50, Inclusive,

19                  Defendants.

20

21          Defendant PROGRESSIVE CASUALTY INSURANCE COMPANY hereby answers Plaintiff

22   KARESHMEH KABIRI'S Complaint (the "Complaint"), as follows:

23                              <u>**GENERAL DENIAL**</u>

24          Pursuant to California Code of Civil Procedure section 431.30, Defendant denies generally each

25   and every allegation and each purported cause of action contained in Plaintiff's Complaint, and without

26   limiting the generality of the foregoing, denies that Plaintiff or any other current or former employee has

27   been damaged or aggrieved in any amount or at all, by reason of any act or omission of Defendant.

28

---

DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT
FOR DAMAGES

74973269v.1

## SEPARATE ADDITIONAL DEFENSES

In further answer to Plaintiff's Complaint, and as separate and distinct defenses, Defendant alleges the following additional defenses. In asserting these defenses, Defendant does not assume the burden of proof as to matters that, pursuant to law, are Plaintiff's burden to prove. Further, Defendant does not presently know all of the facts and circumstances with respect to Plaintiff's claims and therefore Defendant reserves the right to amend its Answer to add facts and defenses as new information is discovered.

## FIRST SEPARATE DEFENSE

### (Failure To State Cause Of Action - All Causes of Action)

Plaintiff's Complaint, and each and every cause of action purported to be alleged therein, fails to state facts sufficient to constitute a cause of action.

## SECOND SEPARATE DEFENSE

### (Statute Of Limitations - All Causes of Action)

Plaintiff's Complaint, and each and every cause of action purported to be alleged therein, is barred by the applicable statute of limitations including, but not limited to, California Government Code sections 12960 and 12965; and California Code of Civil Procedure sections 335.1, 337, 338(a), 339, 339(1), 340(a)-(b), and 343.

## THIRD SEPARATE DEFENSE

### (Arbitration - All Cause of Action)

To the extent any recoveries sought by the Complaint are for claims subject to arbitration agreements between Defendant and Plaintiff, the recoveries are subject to the terms of (or the claims must be brought in arbitration pursuant to) such agreements.

## FOURTH SEPARATE DEFENSE

### (Failure To Exhaust Administrative Remedies - First through Third Causes of Action)

Plaintiff's causes of action for violation of the California Fair Employment and Housing Act ("FEHA") are barred to the extent Plaintiff failed to exhaust her administrative remedies pursuant to California Government Code sections 12960, 12965, and all other applicable laws.

74973269v.1

**FIFTH SEPARATE DEFENSE**

**(Failure To Exhaust Internal Remedies - All Causes of Action)**

Plaintiff's claims, in whole or in part, are barred because Defendant maintains a policy prohibiting discrimination, harassment and retaliation (and for wage and hour violations), and provides an internal procedure for complaint, investigation and remedial action, and Plaintiff had knowledge of the policies and failed to make an internal complaint and/or exhaust her internal remedies provided by Defendant.

**SIXTH SEPARATE DEFENSE**

**(Failure To Take Advantage Of Preventative/Corrective Opportunities - First through Sixth Causes Of Action)**

If any of Defendant's employees or agents engaged in unlawful discriminatory or retaliatory behavior towards Plaintiff, Defendant is not liable, or Plaintiff's damages must be reduced accordingly, because Defendant exercised reasonable care to prevent and correct promptly any discriminatory or retaliatory behavior, and Plaintiff unreasonably failed to avail herself of preventative and corrective opportunities provided by Defendant.

**SEVENTH SEPARATE DEFENSE**

**(Good Faith - First through Sixth Causes of Action)**

Any and all conduct of which Plaintiff complains or which is attributed to Defendant was a just and proper exercise of management discretion, at all times privileged and justified, and undertaken for fair and honest reasons, in good faith and without malice.

**EIGHTH SEPARATE DEFENSE**

**(Avoidable Consequences - First through Sixth Causes of Action)**

If any of Defendant's employees or agents engaged in unlawful discriminatory or retaliatory behavior towards Plaintiff, Defendant is not liable, or Plaintiff's damages must be reduced accordingly, because Defendant exercised reasonable care to prevent and correct promptly any discriminatory or retaliatory behavior, and Plaintiff unreasonably failed to avail herself of preventative and corrective opportunities provided by Defendant.

3

## NINTH SEPARATE DEFENSE

### (Managerial Immunity – First through Sixth Cause Of Action)

The claims alleged against Defendant are barred under the doctrine of managerial immunity.

## TENTH SEPARATE DEFENSE

### (Exercise Of Reasonable Care- First through Sixth Causes of Action)

The Complaint, and each purported cause of action contained therein, is barred in whole or in part because Defendant exercised reasonable care to prevent and promptly correct any alleged discriminatory and/or retaliatory behavior.

## ELEVENTH SEPARATE DEFENSE

### (After-Acquired Evidence - First through Sixth Causes of Action)

Plaintiff's claims for damages are barred to the extent she engaged in any fraud or misconduct of which Defendant was unaware until after Plaintiff filed suit, and which, if known would have caused Plaintiff to be terminated or not hired in the first place.

## TWELFTH SEPARATE DEFENSE

### (Scope Of Employment - First through Sixth Causes of Action)

Defendant is not liable for the alleged conduct of its employees to the extent that such conduct was outside the course and scope of their employment.

## THIRTEENTH SEPARATE DEFENSE

### (No Hostile Work Environment – First through Sixth Causes of Action)

Any and all conduct of which Plaintiff complains (if it occurred) was not sufficiently severe or pervasive to create a hostile work environment.

## FOURTEENTH SEPARATE DEFENSE

### (Legitimate And Nondiscriminatory/Non-Retaliatory Business Reason For Conduct - First through Sixth Causes of Action)

The Complaint, and each purported cause of action contained therein, is barred in whole or in part because the alleged conduct about which Plaintiff complains was not based on any actual or

perceived protected activity and/or characteristic, but was based on one or more legitimate business reasons.

## FIFTEENTH SEPARATE DEFENSE

### (Pre-existing Injuries - First through Sixth Causes of Action)

Plaintiff's injuries, losses, or damages, if and to the extent they occurred, preexisted, or were suffered after the relationship between Plaintiff and Defendant, and said injuries or illnesses were neither caused by nor exacerbated by said relationship.

## SIXTEENTH SEPARATE DEFENSE

### (No Protected Activity – First through Sixth Causes Of Action)

Plaintiff did not engage in any legally protected activity.

## SEVENTEENTH SEPARATE DEFENSE

### (No Causal Connection – First through Sixth Causes of Action)

Plaintiff's claims fail as they cannot establish a causal connection between any protected characteristic and/or purported protected activity and any adverse action(s) allegedly taken against her.

## EIGHTEENTH SEPARATE DEFENSE

### (Prompt Remedial Action – First through Sixth Causes of Action)

To the extent that Plaintiff complained of any unlawful conduct, Defendant took prompt and appropriate remedial action to investigate and address her complaint(s) and took appropriate corrective action.

## NINETEENTH SEPARATE DEFENSE

### (Mixed Motive/Same Decision – First through Sixth Causes Of Action)

Plaintiff's claims are barred in whole or in part to the extent any employment decision or employment action made or taken with respect to Plaintiff by Defendant would have occurred in the absence of any alleged unlawful motivation.

///

DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

74973269v.1

## TWENTIETH SEPARATE DEFENSE

### (Failure To Comply With Employer Directions - All Causes of Action)

The Complaint, and each purported cause of action contained therein, is barred in whole or in part because Plaintiff failed to substantially comply with all the direction of Defendant and its agents, representatives, employees, and/or supervisors concerning the services upon which she was engaged, and such disobedience was neither impossible, nor unlawful, and did not impose new and/or unreasonable burden(s) upon Plaintiff.

## TWENTY-FIRST SEPARATE DEFENSE

### (Failure To Mitigate Damages - All Causes of Action)

Plaintiff is not entitled to back pay and/or other damages for any cause of action purported to be alleged in her Complaint to the extent that she failed to mitigate her alleged loss of wages or other damages.

## TWENTY-SECOND SEPARATE DEFENSE

### (Setoff - All Causes of Action)

To the extent Plaintiff received other benefits and/or awards attributable to an injury for which she seeks compensation in this case, such benefits and/or awards should offset, in whole or in part, any award she receives here for the same injury.

## TWENTY-THIRD SEPARATE DEFENSE

### (No Attorney Fees - All Causes of Action)

Plaintiff's Complaint, and each purported cause of action therein, fails to state facts sufficient to support a claim for recovery of attorney fees against Defendant.

## TWENTY-FOURTH SEPARATE DEFENSE

### (Estoppel - All Causes of Action)

Plaintiff's Complaint, and each and every cause of action purported to be alleged therein, is barred in whole or in part by judicial, equitable and/or collateral estoppel.

///

DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

74973269v.1

## TWENTY-FIFTH SEPARATE DEFENSE

### (Waiver - All Causes of Action)

Plaintiff's Complaint, and each and every cause of action purported to be alleged therein, is barred in whole or in part by the doctrine of waiver.

## TWENTY-SIXTH SEPARATE DEFENSE

### (Unclean Hands - All Causes of Action)

Plaintiff's Complaint, and every cause of action purported to be alleged therein, is barred by the doctrine of unclean hands.

## TWENTY-SEVENTH SEPARATE DEFENSE

### (Workers' Compensation Preemption - All Causes of Action)

Plaintiff's Complaint, and each cause of action attempted to be stated therein, arises from an employment relationship, such that any emotional distress or mental pain and anguish allegedly suffered is barred by the exclusive remedy provided by California Labor Code sections 3600 et. seq., and cannot be compensated for in the present action.

## TWENTY-EIGHTH SEPARATE DEFENSE

### (Lack Of Malice - First through Sixth Causes of Action)

Assuming, arguendo, any conduct alleged by Plaintiff occurred, such conduct was not the result of purposeful, bad faith, knowing, willful, intentional, oppressive, fraudulent, malicious, despicable, or callous motive by Defendant.  Plaintiff may not recover punitive damages against Defendant for the employment decisions of its agent(s) to the extent those decisions were contrary to policies instituted against wrongful conduct including policies and good faith enforcement of rules prohibiting harassment, retaliation and discrimination.

## TWENTY-NINTH SEPARATE DEFENSE

### (Failure to State a Claim for Relief for Punitive Damages – First through Sixth Causes of Action)

Plaintiff is not entitled to recover any punitive, double or exemplary damages against Defendant and any allegations with respect thereto should be stricken because Plaintiff has failed to plead and

DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

74973269v.1

cannot prove facts sufficient to support allegations of oppression, fraud and/or malice pursuant to California Civil Code § 3294(a).

### THIRTIETH SEPARATE DEFENSE

### (Kolstad Defense - First through Sixth Causes of Action)

Plaintiff may not recover punitive damages against Defendant for the employment decisions of its agent(s) to the extent that those decisions were contrary to policies Defendant instituted against wrongful conduct.

### THIRTY-FIRST SEPARATE DEFENSE

### (No Act by A Managing Agent – First through Sixth Causes of Action)

Plaintiff's prayer for punitive damages is barred to the extent that she has not identified any unlawful conduct by an officer, director or managing agent of Defendant.

### THIRTY-SECOND SEPARATE DEFENSE

### (Failure to Exhaust Administrative Remedies - Seventh Cause of Action)

Plaintiff's claim for civil penalties is barred to the extent Plaintiff has failed to exhaust any administrative remedies required by the Labor Code Private Attorneys General Act of 2004, Lab. Code §§ 2698 et seq. ("PAGA").

### THIRTY-THIRD SEPARATE DEFENSE

### (Standing)

Plaintiff's claim for civil penalties is barred on the grounds that Plaintiff lacks standing to pursue any action for a violation of a Labor Code provision since Plaintiff was not subject to one or more of the alleged violations.

### THIRTY-FOURTH SEPARATE DEFENSE

### (Unjust, Arbitrary and Oppressive, or Confiscatory Penalties)

Plaintiff's claim for civil penalties is barred to the extent the recovery of penalties, under the circumstances of this case, would be unjust, arbitrary and oppressive, or confiscatory and disproportionate to any harms resulting from Defendant's conduct (which Defendant expressly denies) and thus unconstitutional under Article I, Section VII, of the California Constitution.

### THIRTY-FIFTH SEPARATE DEFENSE

### (Unnecessary, Unreasonable, Unknown, or Unascertainable Expenses)

Plaintiff's claim for civil penalties is barred to the extent any expenses allegedly incurred by Plaintiff were unnecessary or unreasonable, unknown to Defendant, or unascertainable.

### RIGHT TO ASSERT ADDITIONAL DEFENSES

Defendant presently has insufficient knowledge or information upon which to form a belief whether there may be additional, as yet unstated, defenses, and reserves the right to assert additional defenses in the event that discovery indicates that such defenses are appropriate.

### PRAYER

WHEREFORE, Defendant prays for judgment as follows:

1.    That Plaintiff takes nothing by her Complaint;

2.    That judgment be entered in favor of Defendant and against Plaintiff on all causes of action;

3.    That Defendant be awarded reasonable attorney fees according to proof;

4.    That Defendant be awarded the costs of suit incurred herein; and

5.    That Defendant be awarded such other and further relief as the Court may deem appropriate and proper.


DATED: September 17, 2021                          Respectfully submitted,

SEYFARTH SHAW LLP


By: _____
Michael J. Burns
Phillip J. Ebsworth

Attorneys for Defendant
PROGRESSIVE CASUALTY INSURANCE
COMPANY

9

74973269v.1

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 400 Capitol Mall, Suite 2350, Sacramento, California  95814-4428.  On September 17, 2021, I served the within document(s):

**DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

[X] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

[ ] by causing the document(s) listed above to be personally delivered to the person(s) at the address(es) set forth below.

[ ] by placing the document(s) listed above in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Sacramento, California, addressed as set forth below.

[ ] by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

Josh D. Gruenberg                          *Attorneys for Plaintiff Kareshmeh Kabiri*
Benjamin S. Silver
Gruenberg Law                              Tel:     (619) 230-1234
2155 First Avenue                          Fax:     (619) 230-1074
San Diego, CA  92101-2013

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on September 17, 2021, at Sacramento, California.

_____
                      Linda Ninelist

DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

74973269v.1



 (/Dashboard)

**Confirmation #:** 25644865

**Case Title:** Kabiri vs Progressive Casualty Insurance Company [IMAGED]

Thank you for choosing One Legal. If you have any questions about this order, please email us at support@onelegal.com.

## CASE INFORMATION

| | |
|---|---|
| **Court Name:** | San Diego County, Superior Court of California |
| **Court Branch:** | Central - Civil |
| **Case Title:** | Kabiri vs Progressive Casualty Insurance Company [IMAGED] |
| **Case Category:** | Civil - Unlimited |
| **Case Type:** | Other employment |
| **Case #:** | 37-2021-00033617-CU-OE-CTL |

## ORDER DETAILS

| | |
|---|---|
| **Order Type:** | eFiling |
| **Filing order #:** | 16931381 |
| **Date/Time Submitted:** | 9/17/2021 1:14 PM PT |
| **Client Billing Code:** | SAC24130 |
| **Contact Name:** | Jesse Gutierrez |
| **Attorney Name:** | none |
| **Email Notification:** | Contact |

## DOCUMENTS

| Document Type | Document Title | Pages Uploaded |
|---|---|---|
| Answer | DEFENDANT PROGRESSIVE CASUALTY INSURANCE COMPANYS ANSWER TO PLAINTIFFS COMPLAINT FOR DAMAGES | 10 |

© One Legal LLC

Version: 7.0.20624.140-1621 | Customer #0117079

Accessibility statement (https://www.onelegal.com/accessibility/)   |   Privacy policy

(https://www.onelegal.com/privacy/)   |   Terms of service (https://www.onelegal.com/terms/)

**EXHIBIT C**

JVR No. 1909080006, 2019 WL 4240700 (E.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, E.D. California.

# SCHMIDT v. SHASTA COUNTY MARSHALL'S OFFICE

2:14CV02471

DATE OF INCIDENT: March 14, 2014
DATE OF FILING: October 21, 2014
DATE OF TRIAL/SETTLEMENT: August 06, 2019

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $632,000**

**Related Court Documents:**
Plaintiff's complaint: 2014 WL 12898207

Defendant's trial brief: 2018 WL 9458173

Plaintiff's trial brief: 2018 WL 9458172

Final pretrial order: 2019 WL 4059995

Verdict: 2019 WL 4059590

Judgment: 2019 WL 4059593

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Clayeo C. Arnold, Law Office of Clayeo C. Arnold, Sacramento, CA
Anthony J. Poidmore, Sacramento, CA
Defendant:
Timothy G. Yeung, Sloan Sakai Yeung & Wong LLP, Sacramento, CA
Steve Cikes, Sloan Sakai Yeung & Wong LLP, Sacramento, CA

JUDGE: Morrison C. England, Jr.

RANGE AMOUNT: $500,000 - 999,999
STATE: California
COUNTY: Not Applicable

**SUMMARY**
**PLAINTIFF:**
Sex: F

SCHMIDT V. SHASTA COUNTY MARSHALL'S OFFICE, JVR No. 1909080006 (2019)

Age: Adult

General Occupation: Police Officer

**DEFENDANT:**
Sex: O

Organization Type: Shasta County Marshall's Office

**DAMAGES:**
Compensatory Pain & Suffering: $7,000

Compensatory Past Wages: $373,000

Compensatory Future Wages: $252,000

Total Compensatory Award: $632,000

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: true

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: false


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: General


**Primary General Statute**
**Primary Name: Retaliation**
Primary General Statute Discrimination: false


Specific Statute: Title VII


**General Statute: Retaliation**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**

Jamie Schmidt brought claims for retaliation for engaging in protected activity under Title VII and the California Fair Employment and Housing Act against defendant Shasta County Marshal's Office. Schmidt reportedly began working for defendant as a deputy marshal during October 2008. Schmidt said she reported to defendant's executive officer that she had been sexually harassed by her supervising sergeant, March 9, 2012. According to Schmidt, the supervising sergeant made sexually explicit comments to her and when she objected, began retaliating against her. The defendant reportedly investigated Schmidt's complaint and determined it was unfounded, July 31, 2012. After the supervisor learned about the complaint, Schmidt reportedly received two disciplinary write-ups and was not allowed to continue working as a courtroom bailiff when her judge received a

new courtroom assignment. Schmidt also claimed that the defendant instructed its dispatchers to monitor the courtroom cameras to watch her and make a note of anything she did wrong, denied her requests for overtime, gave her unfavorable assignments, failed to give her breaks within a reasonable amount of time and allowed other officers to criticize and be rude to her. Schmidt said she took stress leave from September 2012 to January 2014, filed a workers compensation claim, returned to work on light duty before determining that the work situation had not improved, then resigned due to the discriminatory and harassing conduct she had experienced, March 14, 2014. The defendant denied liability and argued the plaintiff was not subjected to a materially adverse employment action or any conduct to dissuade her from complaining about sexual harassment. The defendant argued that it disciplined Schmidt for misconduct, including leaving an unsecured taser in a courtroom and failing to complete her assignment to calibrate the preliminary alcohol screening device. The jury found for the plaintiff on her claims for retaliation for engaging in protected activity under Title VII and the Fair Employment and Housing Act. Jurors awarded the plaintiff a total of $632,000 in damages.

Jury Verdict Research
COURT: USDC

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1904040053, 2018 WL 7954353 (N.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, N.D. California.

# NEWTON v. EQUILON ENTERPRISES L.L.C. D/B/A SHELL OIL PRODUCTS U.S.

4:17CV03961

DATE OF INCIDENT: September 28, 2016
DATE OF FILING: July 13, 2017
DATE OF TRIAL/SETTLEMENT: December 20, 2018

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $475,000**

**Related Court Documents:**
Defendant's motion for summary judgment: 2018 WL 7291242

Plaintiff's opposition to defendant's motion for summary judgment: 2018 WL 7291243

Verdict form: 2018 WL 7291146

Verdict form (phase II): 2018 WL 7291144


**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Aaron P. Minnis, Minnis & Smallets L.L.P., San Francisco, CA
Sonya L. Smallets, Minnis & Smallets L.L.P., San Francisco, CA
Evan Ettinghoff, Minnis & Smallets L.L.P., San Francisco, CA
Sean D. McHenry, Minnis & Smallets L.L.P., San Francisco, CA
Defendant:
Gary T. Lafayette, Lafayette & Kumagai L.L.P., Oakland, CA
Brian H. Chun, Lafayette & Kumagai L.L.P., Oakland, CA
Barbara L. Lyons, Lafayette & Kumagai L.L.P., Oakland, CA

JUDGE: Yvonne Gonzalez Rogers

RANGE AMOUNT: $200,000 - 499,999
STATE: California
COUNTY: Not Applicable

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.164   Page 50 of 80

NEWTON V. EQUILON ENTERPRISES L.L.C. D/B/A..., JVR No. 1904040053...

**DEFENDANT:**

Sex: O

Organization Type: Equilon Enterprises L.L.C. d/b/a Shell Oil Products U.S.

**DAMAGES:**

Compensatory Pain & Suffering: $475,000

Total Compensatory Award: $475,000

**ADVERSE ACTION**

Closer Supervision: true

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: true

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: true

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: General Business Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Sex Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State Statute


**General Statute: Whistleblower**
General Statute Discrimination: false

Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false

Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
Ciara Newton filed this lawsuit against Equilon Enterprises L.L.C., d/b/a Shell Oil Products U.S., for sex-based harassment, failure to prevent harassment and discrimination, sex discrimination and retaliation in violation of the California Fair Employment and Housing Act (FEHA) and whistleblower retaliation and wrongful termination in violation of Cal. Lab. Code

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.166   Page 52 of 80

NEWTON V. EQUILON ENTERPRISES L.L.C. D/B/A..., JVR No. 1504040053...

**Sec. 1102.5.** The plaintiff reportedly began working for the defendant in January 2016 as a refinery process operator. In February 2016, the plaintiff apparently began training with her assigned supervisor, who allegedly made it clear that he did not believe she and other women belonged at the refinery and who told her that 'women do not last long' in that department. The plaintiff claimed that her supervisor held her to a different standard than her male co-workers in that he would counsel her for arriving late at work, even though she would arrange for a co-worker to cover for her as the defendant's policy allowed, but he would not discipline a male co-worker who would arrive late and who would not make prior arrangements. In addition, the plaintiff claimed that her supervisor refused to assign her to a certain team because he said it would not be fair to that team as they already had a girl on it. According to the plaintiff, she reported the discrimination and harassment to human resources but no action was taken and she was discouraged from taking any further action. In June of 2016, the plaintiff purportedly was assigned to report to a temporary supervisor, and he allegedly repeatedly asked her if she was scared to work there, which he did not ask the male hire on the team about. The plaintiff asserted that shortly after she began reporting to the temporary supervisor, a sulfuric acid spill occurred. According to the plaintiff, she attempted to document the spill and tape off the area but her temporary supervisor objected and asked her if she wanted to get him and other operators in trouble. The plaintiff claimed the temporary supervisor then ordered her to take the information about the spill out of her shift report and told her he would clean up the spill himself. The plaintiff claimed she felt intimated and scared and followed her temporary supervisor's direct command. The plaintiff asserted that, following this incident, an operator with whom she had never worked with before warned her to 'watch her back' and told her that her co-workers and supervisors did not want her there and that 'they would find a way to get rid of her.' The plaintiff's temporary supervisor allegedly subsequently made negative entries in her file without telling her about his concerns prior to documenting them which was contrary to the defendant's policy. In August 2016, the plaintiff reportedly arrived to work to find a vulgar sticker on her desk and she had learned that a number of team members were wearing the sticker on their hardhats and that the stickers had been made and passed out by a supervisor. The plaintiff claimed that in September 2016 she met with her new supervisor and he praised her willingness to learn, as well as her honesty and integrity, but then a few days later, one day before the end of her probationary period, the defendant terminated her employment for 'unsatisfactory performance during the probationary period.' The defendant denied liability and contended that the plaintiff was released from her probationary employment because she had not shown she was capable of performing her job without endangering herself or others. In addition, the defendant contended that repeated errors called into question whether she was retaining her training, as well as her judgment, and that she had attendance problems far in excess of any of her peers. Moreover, the defendant contended that management acted promptly after it was discovered that an offensive sticker had been placed on the plaintiff's desk and that it reiterated to staff that the sticker was inappropriate and a violation of the defendant's policy. The jury found in favor of the plaintiff on her sex-based harassment claim and her failure to prevent harassment and discrimination claim and awarded her $475,000 for past and future mental suffering and emotional distress.

Jury Verdict Research
COURT: USDC

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1701110002, 2016 WL 7971345 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Superior Court, Los Angeles County, California.

# RUBIO v. TRIUMPH STRUCTURES-LOS ANGELES; TRIUMPH GROUP INC.

BC542623

DATE OF FILING: April 14, 2014
DATE OF TRIAL/SETTLEMENT: December 15, 2016

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $550,000**

**Related Court Documents:**
Defendants' notice of motion and motion for summary adjudication of issues; supporting memorandum: 2016 WL 7661014

Plaintiff's memorandum of points and authorities in opposition to defendant's motion for summary adjudication of issues: 2016 WL 7661015

Ruling re: defendants' motion for summary adjudication: 2016 WL 7671112

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Maryann P. Gallagher, Law Offices of Maryann P. Gallagher, Los Angeles, CA
Defendant:
David B. Simpson, Wolflick & Simpson, Glendale, CA
Eva P. Gramyk, Wolflick & Simpson, Glendale, CA

JUDGE: Richard E. Rico

RANGE AMOUNT: $500,000 - 999,999
STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

**DEFENDANT:**
Sex: O

Organization Type: Triumph Structures-Los Angeles

Sex: O

Organization Type: Triumph Group Inc.

**DAMAGES:**

Compensatory Past Wages: $135,000

Compensatory Future Wages: $70,000

Compensatory Other: $345,000

Total Compensatory Award: $550,000

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: true

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: true

Harassment: true

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: false


**Entity Type: Manufacturing/Industrial Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Sexual Harassment**
Primary General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**
Alejandro Rubio brought this action against Triumph Structures-Los Angeles and Triumph Group Inc. for sexual harassment, in violation of Cal. Govt. Code Secs. 12940 et seq., a hostile work environment, and failure to prevent harassment. The plaintiff claimed that he worked for the defendants for over five years, but from May 2011 through August 2012, he was subjected to unwelcome and offensive sexual harassment as well as non-consensual physical conduct by his male supervisor, the Production Manager. According to Rubio, he repeatedly told his supervisor to stop, but he refused to do so. Rubio said he filed numerous complaints with managers and Human Resources regarding the illegal conduct, but they failed to take steps to prevent the harassment. The plaintiff further claimed that the hostile and abusive work environment became so intolerable that he was forced to resign. The defendants denied liability and claimed that Rubio never actually resigned nor was he constructively discharged because the law requires that 'intolerable conditions' must exist 'at the time of the employee's resignation,' which was not the case. The defendants argued that Triumph's President acted responsibly and took immediate action in following up on the alleged harassment after Rubio emailed him about it. The defendants also argued that Rubio's employment relationship was severed when he voluntarily relinquished his reemployment rights as part of a workers' compensation settlement. The jury found for the plaintiff and awarded him $205,000 in past and future lost earnings and benefits, as well as $345,000 for past and future emotional distress, anxiety and humiliation.


Jury Verdict Research

COURT: Superior

---

**End of Document**                                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT D**

JVR No. 1807090011, 2018 WL 3344667 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West

Superior Court, Los Angeles County, California.

# ALBARRACIN v. WILSON; FIDELITY NATIONAL MANAGEMENT SERVICES, L.L.C.

BC642922

DATE OF INCIDENT: November 20, 2015
DATE OF FILING: December 06, 2016
DATE OF TRIAL/SETTLEMENT: April 13, 2018

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $2,200,000**

**Related Court Documents:**
Plaintiff's first amended complaint: 2017 WL 9249933

Defendant Wilson's memorandum in support of motion for summary judgment: 2017 WL 9249937

Plaintiff's opposition to defendant Wilson's motion for summary judgment: 2018 WL 2046075

Defendant Fidelity National's memorandum in support of motion for summary judgment: 2017 WL 9249936

Plaintiff's opposition to defendant Fidelity National's motion for summary judgment: 2018 WL 2046061

Order on defendants' motions for summary judgment: 2018 WL 2084987

Plaintiff's trial brief: 2018 WL 2046077

Defendants' trial brief: 2018 WL 2046076

Verdict: 2018 WL 2046881

Verdict (punitive damages): 2018 WL 2175988

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Mike Arias, Arias Sanguinetti Stahle & Torrijos L.L.P., Los Angeles, CA
Mikael H. Stahle, Arias Sanguinetti Stahle & Torrijos LLP, Los Angeles, CA
Griselda S. Rodriguez, Rodriguez & Tran L.L.P., Los Angeles, CA
Defendant:
Henry L. Sanchez, Jackson Lewis P.C., Los Angeles, CA
Negin Iraninejadian, Jackson Lewis PC, Los Angeles, CA

JUDGE: Samantha P. Jessner

RANGE AMOUNT: $2,000,000 - 4,999,999
STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: F

Age: Adult

General Occupation: Paralegal

**DEFENDANT:**
Sex: M

Age: Adult

Organization Type: Wilson

Sex: O

Organization Type: Fidelity National Management Services, L.L.C.

**DAMAGES:**
Compensatory Pain & Suffering: $250,000

Total Compensatory Award: $250,000

Punitive Damages: $1,950,000

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: true

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: true

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: General Business Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Sexual Harassment**
Primary General Statute Discrimination: false

Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false

Specific Statute: Emotional Distress

**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Soledad Albarracin brought claims against defendants Robert Gardner Wilson and Fidelity National Management Services, L.L.C. based on hostile work environment sexual harassment under Cal. Gov't Code Sec. 12940(j), failure to prevent sexual harassment under Cal. Gov't Code Sec. 12940(k), retaliation under Cal. Gov't Code Sec. 12940(h), wrongful discharge in violation of public policy and intentional infliction of emotional distress. The plaintiff said she began working for defendant Fidelity National as a paralegal on Nov. 24, 2014. During April 2015, defendant attorney Robert Gardner Wilson allegedly joined defendant Fidelity National as a senior attorney and began assigning work to the plaintiff as her supervising attorney. On Sept. 9, 2015, the plaintiff said she was attending a retreat and team building exercise in Colorado Springs when defendant Robert Gardner Wilson followed her to her hotel room and said 'So, your room or mine?' Defendant Wilson allegedly blocked the plaintiff in the hallway and attempted to kiss her twice until she physically pushed him away. The next day, the plaintiff claimed that defendant Wilson continued to threaten and intimidate her by sitting next to her at lunch, following her during a group hike, following her into the hotel bar and sitting at her table. On Sept. 10, 2015, the plaintiff said she told her supervisor about the incident. The supervisor allegedly gave plaintiff the next day off and directed her to not work with defendant Wilson or talk to anyone about what had taken place. After her supervisor investigated the plaintiff's complaint, the supervisor allegedly told her 'steps have been taken,' 'there are two sides to every issue' and that defendant Wilson had denied her allegations, Sept. 14, 2015. The supervisor allegedly directed the plaintiff to continue working under defendant Wilson's direction and supervision. When the plaintiff told the supervisor that she could not continue working in such a hostile work environment, the supervisor reportedly told her 'he needed solid evidence' of the alleged harassment. The plaintiff said she left the office on Sept. 16, 2015, to meet with her primary care physician, who placed her on stress leave from Sept. 18-19 and referred her to a psychiatrist. The plaintiff said she returned to her primary care doctor on Sept. 17, was excused from work from Sept. 21-25, 2015, then took a personal leave of absence due to emotional distress and the hostile work environment. On Sept. 28, 2015, the defendant allegedly transferred the investigation to human resources, and the plaintiff put her complaint about defendant Wilson's conduct in writing. Defendant Fidelity National reportedly terminated the plaintiff, Nov. 20, 2015, after rejecting her request to extend her personal leave. Defendant Fidelity National denied liability and claimed that it had taken reasonable steps to prevent and correct workplace sexual harassment. According to defendant Fidelity National, it discharged the plaintiff after she failed to return to work when her personal leave expired on Nov. 17, 2015. The jury found that the plaintiff's complaint about sexual harassment was a substantial motivating reason for defendant Fidelity National's decision to discharge her. The jury also found that defendant Fidelity National's conduct was outrageous and caused the plaintiff's emotional distress, and its agent or employee engaged in the conduct with malice, oppression or fraud. Jurors awarded the plaintiff $250,000 for emotional distress and $1,950,000 for punitive damages.

Jury Verdict Research
COURT: Superior

**End of Document**                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

OLIVAS-DEAN v. AMERICAN MEIZHOU DONGPO GROUP..., JVR No. 1708170006...

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.176   Page 62 of 80

JVR No. 1708170006, 2017 WL 3531353 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West

Superior Court, Los Angeles County, California.

## OLIVAS-DEAN v. AMERICAN MEIZHOU DONGPO GROUP INC.; YANG; HERNANDEZ

BC581538

DATE OF INCIDENT: November 30, 2014
DATE OF FILING: May 12, 2015
DATE OF TRIAL/SETTLEMENT: April 24, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $350,000**

**Related Court Documents:**
Defendants' memorandum in support of motion for summary judgment: 2016 WL 7496552

Plaintiff's memorandum opposing defendants' motion for summary judgment: 2016 WL 7496551

Order on defendants' motion for summary judgment: 2016 WL 7484850

Defendants' memorandum in support of motion for summary adjudication: 2016 WL 9275958

Plaintiff's memorandum opposing defendants' motion for summary adjudication: 2017 WL 2909610

Order on defendants' motion for summary adjudication: 2017 WL 2909305

Joint statement of the case: 2017 WL 2909675

Verdict form 1 (claims against defendant American Meizhou Dongpo Group): 2017 WL 2909430

Verdict form 2 (claims against defendants Yang and Hernandez): 2017 WL 2909422

Verdict (punitive damages): 2017 WL 2909431

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Geoffrey C. Lyon, Lyon Law P.C., Long Beach, CA
Defendant:
Jeffrey C.P. Wang, WHGC Law P.L.C., Newport Beach, CA
Kathleen E. Alparce, WHGC Law P.L.C., Newport Beach, CA
W. Jeffrey Burch, WHGC Law P.L.C., Newport Beach, CA

JUDGE: Frederick C. Shaller

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.177   Page 63 of 80

OLIVAS-DEAN V. AMERICAN MEIZHOU DONGPO GROUP..., JVR No. 1708170006...

RANGE AMOUNT: $200,000 - 499,999
STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: Food Service Worker


**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: American Meizhou Dongpo Group Inc.

Sex: M

Age: Adult

General Occupation: Middle Manager

Organization Type: Yang

Sex: M

Age: Adult

General Occupation: Middle Manager

Organization Type: Hernandez


**DAMAGES:**
Compensatory Pain & Suffering: $20,000

Compensatory Past Wages: $80,000

Total Compensatory Award: $100,000

Punitive Damages: $250,000


**ADVERSE ACTION**
Closer Supervision: false

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.178   Page 64 of 80

OLIVAS-DEAN v. AMERICAN MEIZHOU DONGPO GROUP..., JVR No. 1708170006...

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: true

Harassment: true

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Service/Retail Company**

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.179   Page 65 of 80

OLIVAS-DEAN V. AMERICAN MEIZHOU DONGPO GROUP..., JVR No. 1708170006...

**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Sexual Harassment**
Primary General Statute Discrimination: false


Specific Statute: State


**General Statute: Sex Discrimination**
General Statute Discrimination: true


Specific Statute: State


**General Statute: Sexual Orientation Discrimination**
General Statute Discrimination: true


Specific Statute: State


**General Statute: Disability Discrimination**
General Statute Discrimination: true


Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false


Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**

Tony Olivas-Dean, a server, sued American Meizhou Dongpo Group, Inc., and managers Frank Yang and Pablo Hernandez for sexual harassment and discrimination based on his gender and sexual orientation, under Cal. Gov't Code Secs. 12940(j) and 12940(a), as well as disability discrimination, under Cal. Gov't Code Secs. 12940(a), 12940(m) and 12940(n), retaliation, wrongful termination, and battery under the California Fair Employment and Housing Act (FEHA). The plaintiff claimed Hernandez harassed him because of his sex and sexual orientation by telling him he had 'pretty eyes' and making suggestive comments, pressing his crotch against his backside, pinching and grabbing him, and giving him unwanted massages. Olivas-Dean asserted after he complained about the sexual harassment, Hernandez allegedly began attributing other employees' errors to him, gave his tables to other servers, sent him home early, cut his shifts, and forced him to give excessive tips to other employees.

Case 3:21-cv-01649-GPC-MDD   Document 1-3   Filed 09/20/21   PageID.180   Page 66 of 80

OLIVAS-DEAN V. AMERICAN MEIZHOU DONGPO GROUP..., JVR No. 1708170006...

He claimed after Hernandez directed him to move and clean heavy stone and steel tables, he suffered a back injury and ligament damage to his wrist and ankle, that he reported his injuries to Hernandez and Yang, but they allegedly refused his request for light duty that would not aggravate his injuries. He alleged in August 2014, Yang ran his fingers through his hair in a sexual manner, asked him out to dinner, offered to make him drinks, pinched his hips, and held his hand. Olivas-Dean said after he indicated he was not interested, Yang reportedly assigned him less desirable sections, yelled at him, gave away his assigned tables, and sent him home early. The plaintiff asserted after he filed complaints with the Equal Employment Opportunity Commission and Department of Fair Employment and Housing, Yang allegedly yelled at him in front of customers about 'trying to sue them.' The plaintiff argued that after he contacted a workers' compensation attorney about his work-related injuries and disabilities, Yang refused to allow him to add more tables to his section, yelled at him, and then fired him. The defendants denied the claims and argued that they terminated the plaintiff for allegedly making false statements on his employment application, failed to disclose that he was terminated from one job for harassing other employees, and fired from at least three other jobs. Moreover, they argued that they fired the plaintiff for being so loud that customers complained, getting into conflicts with other employees, and yelling and becoming abusive with an assistant manager. The jury found for the plaintiff on his claims for wrongful termination and failure to prevent discrimination or retaliation against American Meizhou Dongpo Group and awarded him $80,000 for past lost earnings, $20,000 for past mental and emotional suffering, and $250,000 in punitive damages.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1801150007, 2017 WL 6947683 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West

Superior Court, Los Angeles County, California.

# WHITFIELD v. BROADSPECTRUM DOWNSTREAM SERVICES INC. F/K/A TIMEC COMPANY INC.

BC632479

DATE OF INCIDENT: March 15, 2016
DATE OF FILING: August 31, 2016
DATE OF TRIAL/SETTLEMENT: November 28, 2017

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $292,500**

**Related Court Documents:**
Plaintiff's first amended complaint: 2016 WL 10745122

Proposed joint statement of the case: 2017 WL 6806719

Verdict (liability and damages): 2017 WL 6810673

Verdict (punitive damages): 2017 WL 6810672

Judgment: 2017 WL 6812213

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Brian G. Hannemann, Hannemann Law Firm P.C., Upland, CA
Marc D. Mabile, Law Offices of Marc D. Mabile, San Diego, CA
Jonathan A. Weinman, Broslavsky & Weinman L.L.P., Los Angeles, CA
Zach Broslavsky, Broslavsky & Weinman L.L.P., Manhattan Beach, CA
Defendant:
Patrick C. Mullin, Jackson Lewis P.C., San Francisco, CA
Douglas G.A. Johnston, Jackson Lewis P.C., San Francisco, CA
Mark Askanas, Jackson Lewis P.C., San Francisco, CA
Henry L. Sanchez, Jackson Lewis P.C., Los Angeles, CA

JUDGE: Michael L. Stern

RANGE AMOUNT: $200,000 - 499,999
STATE: California
COUNTY: Los Angeles

**SUMMARY**

**PLAINTIFF:**

Sex: F

Age: Adult, 51

Race: African American

**DEFENDANT:**

Sex: O

Organization Type: Broadspectrum Downstream Services Inc. f/k/a Timec Company Inc.

**DAMAGES:**

Compensatory Pain & Suffering: $5,000

Compensatory Past Wages: $25,000

Compensatory Future Wages: $12,500

Total Compensatory Award: $42,500

Punitive Damages: $250,000

**ADVERSE ACTION**

Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: true

Sexual Harassment: true

Harassment: false

Hostile Work Env: true

Isolation: false

Lay Off: false

Loss Benefits: true

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: General Business Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Sexual Harassment**
Primary General Statute Discrimination: false


Specific Statute: General


**General Statute: Retaliation**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**
Sandra Whitfield, a 51-year-old African-American refinery worker, brought this action for sexual harassment, under Cal. Gov't Code Sec. 12940(j), and retaliation, under Cal. Gov't Code Sec. 12940(h) against oil and gas services contractor Broadspectrum

Downstream Services Inc. The plaintiff claimed from 2007 until the end of her employment in 2015, male supervisors allegedly routinely subjected female workers to inappropriate sexual comments, sexual innuendo, propositions for sexual favors, quid pro quo sexual harassment, and a hostile work environment. The plaintiff said one male supervisor allegedly conditioned her work assignments on her having sex with him, and when she objected and declined his sexual advances, he reportedly did not give her duties she was capable of performing. She asserted that a different male supervisor allegedly propositioned her for sex, commented on her figure, leered at her, stood behind her and made sexual sounds, indicating that it would be beneficial for her career if she engaged in sexual acts with him, and he sought sexual favors in exchange for allowing her to attend training classes. The plaintiff said in 2012, she began complaining to her union representatives about the sexual harassment she was experiencing, but the defendant allegedly did not respond to her complaints, and on March 8, 2016, she asked for personal protective equipment to wear, but her supervisor refused the request. Whitfield claimed that she reported the issue and attempted to report the sexual harassment she had experienced to a human resources employee, but the employee reportedly refused to listen to her description of the sexual harassment. The plaintiff alleged that she sent a written complaint reporting sexual harassment to her union representative, but two supervisors met with her, suspended her from work while they conducted an investigation, and escorted her off the premises. She claimed that the defendant terminated her in retaliation for making complaints about the sexual harassment. The defendant denied the allegations and claimed that the plaintiff failed to make herself available for work, that she argued with her supervisors, and left the job site on March 8, 2016. The defendant asserted that on March 9, 2016, it suspended the plaintiff with pay pending its investigation, but that its investigation did not substantiate her complaints of sexual harassment. The jury found for the plaintiff on her sexual harassment claim, determining that her complaint was a substantial motivating reason for the defendant's decision to subject her to an adverse employment action.

Jury Verdict Research
COURT: Superior

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT E

JAFFE v. UHS-CORONA INC. D/B/A CORONA REGIONAL..., JVR No. 1405150066...

JVR No. 1405150066, 2013 WL 8509821 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2018 Thomson Reuters/West
Superior Court, Riverside County, California.

JAFFE v. UHS-CORONA INC. D/B/A CORONA REGIONAL MEDICAL CENTER; UNIVERSAL HEALTH
SERVICES INC.

RIC-543130
DATE OF FILING: December 24, 2009
DATE OF TRIAL/SETTLEMENT: May 07, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $514,350**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's trial brief: 2013 WL 6994632

Verdict form: 2013 WL 6988850

Verdict form (punitive): 2013 WL 6988846

Amended judgment: 2013 WL 7020347

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Marty E. Zemming, Wagner & Pelayes LLP, Riverside, CA
Plaintiff: Tristan Pelayes, Wagner & Pelayes LLP, Riverside, CA
Defendant: Tracie L. Childs, Manning & Kass, Ellrod, Ramirez, Trester LLP, San Diego, CA
Defendant: Christopher R. Allison, Manning & Kass, Ellrod, Ramirez, Trester LLP, San Deigo, CA
Defendant: Darin L. Wessel, Manning & Kass, Ellrod, Ramirez, Trester LLP, San Diego, CA
Defendant: Alfred M. De La Cruz, Manning & Marder, Kass, Ellrod, Ramirez LLP, San Diego, CA
JUDGE: Sherrill Ellsworth

RANGE AMOUNT: $500,000 - 999,999

STATE: California
COUNTY: Riverside

**SUMMARY**
**PLAINTIFF:**
Sex: N

**DEFENDANT:**
Sex: O

Organization Type: UHS-Corona Inc. d/b/a Corona Regional Medical Center

Sex: O

Organization Type: Universal Health Services Inc.

**DAMAGES:**
Compensatory Pain & Suffering: $275,000

Compensatory Past Wages: $17,500

Compensatory Other: $121,850

Total Compensatory Award: $414,350

Punitive Damages: $100,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: General

**Primary General Statute**
**Primary Name: Wrongful Termination**
Primary General Statute Discrimination: false

Specific Statute: General

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Allen V. Jaffe, a licensed respiratory therapist, sued UHS-Corona Inc. d/b/a Corona Regional Medical Center and its parent company, Universal Health Services Inc., for wrongful termination, retaliation, failure to provide meal breaks, and failure to pay overtime wages for missed meal breaks. The former therapist contended he was hired to work full time weekend night shifts while he was attending law school, and that he performed his duties competently during the two years preceding his wrongful termination. The plaintiff claimed he filed written health and safety complaints to his superiors, the Joint Commission, and OSHA about the prohibition against wearing isolation protection barrier gowns and gloves during transports of infectious isolation patients, as well as the cleaning and storage of contaminated metered dose inhalers, which

could lead to the spread of disease, and in retaliation for his complaints, he was terminated. Furthermore, the plaintiff claimed the defendants failed to provide mandatory meal periods during his employment, and that at the time of his termination, they willfully failed to pay him overtime hours for missed meal breaks. The defendants denied the allegations and contended the plaintiff was terminated after several episodes of disciplinary action, and for inappropriate behavior and/or poor performance. The jury found against UHS-Corona only, and awarded the former respiratory therapist $121,850 for his wrongful termination claim, $275,000 for non-economic damages, $5,500 for failure to provide meal breaks, $12,000 for failure to pay overtime wages, and $100,000 in punitive damages. In a final judgment, the court also awarded the plaintiff $160,000 in attorney fees and $9,112 in costs against UHS-Corona Inc. However, the court ordered the plaintiff to pay $1,804 in costs to Universal Health Services Inc.

Jury Verdict Research
COURT: Superior

---

**End of Document**
© 2018 Thomson Reuters. No claim to original U.S. Government Works.

25 Trials Digest 11th 10, 2008 WL 2414817 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2018 Thomson Reuters/West
Superior Court, Sacramento County, California.

Mootz vs. State of California

**TOPIC:**
Synopsis: Correctional officer alleges retaliation, wrongful termination

Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Retaliation; Labor & Employment; Harassment-Sexual; Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Disability/Medical Condition

DOCKET NUMBER: 05AS04214

STATE: California
COUNTY: Sacramento

Verdict/Judgment Date: March 27, 2008

JUDGE: Judy Hersher
**ATTORNEYS:**
Plaintiff: Jill P. Telfer, Law Offices of Jill P. Telfer, Sacramento.
Defendant: Edmund G. Brown Jr., Office of Attorney General, Oakland; Raymond W. Hamilton, Office of Attorney General, Oakland; Courtney S. Lui, Office of Attorney General, Oakland; Miguel A. Neri, Office of Attorney General, Oakland; Fiel D. Tigno, Office of Attorney General, Oakland.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $800,000

Range: $500,000-999,999
Defendants Evans and Sherer were dismissed by plaintiff on February 13, 2008. $300,000 past non-economic loss for retaliation; $500,000 future non-economic loss for retaliation; plus $442,400 attorney fees and $502,523 costs.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Charles R. Mahla, Ph.D., economist, Econ One Research Inc., Sacramento, (916) 449-2860.

**TEXT:**

**CASE INFORMATION**

Mootz vs. State of California, 25 Trials Digest 11th 10 (2008)

**FACTS/CONTENTIONS**

According to court records: Plaintiff Jane Mootz was employed as a correctional officer for 19 years with defendant California Department of Corrections ("CDC"). From January 2003 until April 2004, plaintiff was assigned to Trinity Conservation Camp where she was supervised by defendant Dennis Evans (sued as Brian Evans) and Randall Sherer.

Plaintiff alleged she was subjected to adverse acts and harassment because of her age, her sexual orientation, her disability, and for engaging in protected activities, including complaining about discrimination, alerting her supervisors that an inmate was not provided sufficient medical attention, and taking a medical leave of absence.

Defendants denied plaintiff's allegations and contended that plaintiff had a variety of performance problems related to her employment by defendant CDC, which necessitated corrective employment actions by defendants. Defendants also contended their corrective employment actions were based on lawful and legitimate business reasons.

**CLAIMED INJURIES**

NA

**CLAIMED DAMAGES**

According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Plaintiff served a CCP § 998 offer to settle for $495,000 in July 2006.

**COMMENTS**

According to court records:

The complaint was filed on September 21, 2005.

Trials Digest, A Thomson/West business
Sacramento County Superior Court

---

End of Document © 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

40 Trials Digest 10th 17, 2007 WL 2827715 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2018 Thomson Reuters/West
Superior Court, San Diego County, California.

Denenberg vs. California Department of Transportation

**TOPIC:**
Synopsis: Employee alleges discrimination based on sexual orientation

Case Type: Labor & Employment; Discrimination; Labor & Employment; Harassment-Sexual; Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Disability/Medical Condition

DOCKET NUMBER: GIC836582

STATE: California
COUNTY: San Diego

Verdict/Judgment Date: September 14, 2006

JUDGE: Steven R. Denton
**ATTORNEYS:**
Plaintiff: Paul D. Jackson, Law Offices of Paul D. Jackson, San Diego; David M. deRubertis (lead at trial), deRubertis Law Firm, Woodland Hills.
Defendant: Julie A. Jordan, Department of Transportation, San Diego; Christopher Welsh, Department of Transportation, San Diego.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $144,000

(Range: $100,000 - $199,999)
The jury awarded plaintiff $119,000 in economic damages and $25,000 in non-economic damages, for a total of $144,000. The court also granted plaintiff's post-verdict motion for equitable relief, ordering defendant to promote plaintiff to an Associate level position within the locale, subject to plaintiff's successful completion of the standard probationary terms that would otherwise be applicable to any new employee. It further ordered that, upon the successful completion of the probationary period, plaintiff's promotion would be retroactive to January 31, 2006, with all related benefits, seniority, and service credits also retroactive to that date. The court awarded plaintiff approximately $490,000 in statutory attorney fees and approximately $133,000 in costs of suit. The total judgment was approximately $767,000, plus the equitable relief of a retroactive promotion. That equitable relief order will result in an additional approximately $12,000 of annual earnings for plaintiff through his work life, as well as adjustments in his retirement benefits.

Trial Type: Jury

Trial Length: 4 weeks.

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Christopher H. Benbow, M.D., psychiatrist, La Jolla, (858) 622-0590.; Brian P. Brinig, C.P.A., J.D., economist, Brinig & Company, San Diego, (619) 687-2600.; George J. Pratt, Ph.D., psychologist, Scripps Memorial Hospital, La Jolla, (858) 457-3900.; Michael A. Robbins, human resources consultant, EXTTI Inc., Bell Canyon, (818) 712-0203.

Defendant: Mark A. Kalish, M.D., psychiatrist, San Diego, (619) 282-7172.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to Plaintiff: Plaintiff Fred Denenberg, a gay male, worked as an Assistant Administrator for defendant California Department of Transportation (CalTrans). Since his hiring in 1998, he consistently received excellent performance reviews. Plaintiff claimed that over a period of about a year and a half, he was harassed based on his sexual orientation. The harassment consisted of perceived sexual advances, derogatory comments about his orientation, and a degrading homophobic e-mail.

Since about 1999, plaintiff repeatedly sought a promotion to the Associate level, which was the level immediately above his Assistant level. The Assistant level position was an entry-level position, and it was typically expected that a promotion to Associate would occur in a relatively short time after reaching the Assistant level. However, plaintiff's promotion requests were repeatedly denied. Among other reasons for the denial, plaintiff was told that budgetary constraints within CalTrans prevented him from being promoted.

On July 1, 2004, the claimed budgetary constraints and promotion freeze were lifted. Deputy Director of Traffic Operations, Joseph Hull, promised plaintiff at that time that his promotion to the Associate level would be processed. By late August 2004, plaintiff's direct supervisor had still not completed processing the paperwork needed for plaintiff to receive the promised promotion. Plaintiff's complaints to Mr. Hull about this fact fell on deaf ears.

Concluding that CalTrans was not going to promote him, plaintiff sought legal counsel at that time from Paul Jackson, Esq. On August 27, 2004, Mr. Jackson wrote a letter to CalTrans's upper management, which both informed CalTrans of the sexual orientation harassment and claimed that CalTrans had serially failed to promote plaintiff because of his sexual orientation. After CalTrans received this letter, plaintiff's superiors and co-workers began to retaliate against him, including by making accusations of misconduct against him.

In late September 2004, plaintiff's psychologist placed him on a leave of absence because of depression and stress, secondary to problems at the workplace. As a result of this leave of absence, CalTrans stopped processing plaintiff's promised promotion.

In August 2005, plaintiff was released to return to work on a telecommuting basis. CalTrans, through Mr. Hull, denied the requested accommodation of telecommuting without giving it a chance. Then, plaintiff's psychologist adjusted the accommodation request so that plaintiff could return to the workplace, provided that his face-to-face interaction with various co-workers who had retaliated against him was minimized. Mr. Hull also denied this accommodation, despite the fact that there were other offices or desks within the facility that could have been used to accommodate plaintiff's needs.

When plaintiff was finally released to return to work without any restrictions, CalTrans responded by claiming that it had eliminated plaintiff's position. Over a period of approximately one year, CalTrans offered plaintiff six other positions that were equivalent, or nearly equivalent, to the position he was working in when he began the leave of absence. Plaintiff declined all of these positions. At the time of trial, plaintiff was still employed at CalTrans but on administrative leave.

Plaintiff claimed that CalTrans's refusal to promote him in September 2004 was in retaliation for his August 27, 2004 letter complaining of harassment and discrimination and that CalTrans's reason for not promoting him (that he went out on leave) constituted retaliation for seeking accommodations and disability discrimination. Plaintiff also alleged that CalTrans failed to accommodate him, both by not allowing him to telecommute and by not allowing him to return to the office and work at a different location. Plaintiff further alleged that he was harassed because of his sexual orientation.

Defendant denied any wrongdoing. It contended that plaintiff had not been promoted because of the state budget crisis, the CalTrans budget, and lack of workload. It also claimed that plaintiff had not been eligible for the promotion he sought. Defendant contended that it had begun processing a promotion for plaintiff at the time plaintiff took his leave, but that it could not promote someone who was not working. Finally, defendant denied knowledge of the claimed harassment. CalTrans also claimed that any emotional distress plaintiff suffered was due to other stressors, such as a tumultuous relationship with his domestic partner, who suffered from chronic medical problems. CalTrans introduced evidence of domestic discord, including allegations of domestic abuse, and also impeached plaintiff's testimony that he had never been

involved in any other lawsuits by introducing numerous lawsuits that plaintiff had either filed or that were filed against him.

**CLAIMED INJURIES**
    According to Plaintiff: Emotional distress.

**CLAIMED DAMAGES**
    According to Plaintiff: Lost earnings; medical damages.

**SETTLEMENT DISCUSSIONS**
According to Plaintiff: Demand: $225,000, plus a promotion. Offer: $75,000 without a permanent promotion.

**COMMENTS**
According to Plaintiff: Defendant's motion for new trial was denied, and it has appealed. Plaintiff's counsel, Paul Jackson, litigated the case on plaintiff's behalf. The day before trial call, plaintiff retained David deRubertis to serve as lead trial counsel.

Trials Digest, A Thomson/West business
San Diego County Superior Court/Central

---

**End of Document**                                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.